O

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)             Date: February 25, 2014

Title: ANNIE MCVICAR AND ARCHIE MCVICAR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED v. GOODMAN GLOBAL, INC., ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [10]**

     Before the Court is Defendants Goodman Company LP, Goodman Global Inc., and Goodman Manufacturing Company LP's (together, "Goodman's") Motion to Dismiss Case ("Motion" or Mot.") (Dkt. 10). Having considered the Motion, the opposition, and the reply, the Court hereby GRANTS in part and DENIES in part the Motion.

    **I.    BACKGROUND**

     The following facts are contained in Plaintiffs' Complaint (Dkt. 1) and are construed in a light most favorable to them.

        **A.    The McVicars**

     Sometime before August 2012, Anne and Archie McVicar ("the McVicars") contracted with WCS Restoration to build a home in California. Compl. ¶¶ 55-56.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                                            Date: February 25, 2014

Page 2

During construction of the home, on behalf of the McVicars, WCS Restoration purchased and installed a Goodman-manufactured heating and air conditioning unit. *Id.*

In August 2012, the McVicars moved in. *Id.* ¶ 55. Approximately three weeks later, the heating and air condition unit began to fail. *Id.* ¶ 57. The unit did not produce cold air and would run only on "fan only" mode. *Id.*

WCS Restoration's subcontractor inspected the unit and told the McVicars that the condenser unit was "weak" and should be replaced. *Id.* ¶ 58. In June 2013, the unit began to fail again and the McVicars had it inspected again. *Id.* ¶ 59. The evaporator coil had to be replaced at a cost of $550.00. *Id.* In the next month, the unit needed to be serviced two more times: first, a booster was installed at a cost of $350.00; and second, a stronger booster needed to be installed at a cost of $200.00. *Id.* ¶ 60. In all, the McVicars have spent $1,100 repairing their Goodman-manufactured heating and air conditioning unit. *Id.* ¶ 61.

### B. Class Allegations

Goodman has sold, directly or indirectly, thousands of air conditioners in the State of California to homeowners, developers, contractors, and subcontractors. *Id.* ¶ 33. They also designed, manufactured, marketed, and advertised those air conditioners. *Id.* ¶ 35. With each air conditioner, Goodman provided an express warranty, along with warranting that the air conditioners were fit for the ordinary purpose for which air conditioners are used and were free from defects in materials and workmanship. *Id.* ¶ 38. The express warranties provided that the air conditioners would be "free from defects in materials and workmanship under normal use and maintenance" for periods ranging from five to ten years. *Id.* ¶ 41.

On its website, Goodman represents that, "[w]hen you choose a Goodman brand, you can rest assured that you'll receive a refreshingly affordable product that's covered by what many consider to be the best product warranties in the heating and cooling industry." *Id.* ¶ 40. Goodman has also advertised that "[customers] will enjoy top quality, high-efficiency cooling," and that Goodman "focused on the design, engineering, and manufacture of dependable products that have helped millions and millions of homeowners achieve reliable, high-quality, and affordable indoor comfort." *Id.* ¶ 45.

Based on these facts, the McVicars seek to represent the following class:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                          Date: February 25, 2014

Page 3

> All persons and entities in the State of California that have owned, own, or acquired homes, residences, buildings, or other structures, physically located in the State of California in which Defendants' Goodman- and Amana- brand air conditioners have been installed.

Compl. ¶ 24.

### C. Procedural History

The McVicars filed this putative class action on August 12, 2013. *See generally id.* The Complaint asserts eleven causes of action: (1) violation of California Business and Professions Code section 17200 for unfair, unlawful, and fraudulent business practices; (2) violation of California Business and Professions Code section 17500 for deceptive and false advertising; (3) violation of the California Consumer Legal remedies Act; (4) breach of contract; (5) breach of express warranty; (6) breach of the implied warranty of merchantability; (7) fraudulent concealment; (8) negligent misrepresentation; (9) violation of the Magnuson-Moss Consumer Products Liability Act; (10) unjust enrichment; and (11) declaratory relief. *Id.*

On November 4, 2013, Goodman filed a Motion to Stay Case Pending a JPML Ruling. Mot. to Stay (Dkt. 18). On November 25, 2013, this Court granted the Motion to Stay, noting that "in consideration of the fact that the action is still in its nascent stages of development and out of deference to the JPML, the Court finds it prudent to temporarily stay this case pending a decision by the JPML." Order, November 25, 2013 (Dkt. 22).

On January 8, 2014, this Court lifted the stay following a decision by the JPML to decline consolidation of this case with others pending in other states. Order, January 8, 2014 (Dkt. 24). The Court now considers the pending Motion to Dismiss.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)      Date: February 25, 2014

Page 4

courts accept as true a plaintiff's well-pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts are not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).

Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

### III. ANALYSIS

#### A. Unfair Competition Law Claim

The McVicars' UCL claim asserts that Goodman's conduct was unlawful, unfair, and fraudulent. Compl. ¶¶ 62-67.

California's Unfair Competition Law ("UCL"), Business & Professions Code section 17200, provides relief for "unfair competition," which is defined as "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200; *Zhang v. Superior Court*, 57 Cal. 4th 364, 370 (2013); *Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

Goodman first moves to dismiss the McVicars' Unfair Competition Law claim for a host of reasons, including an argument that the McVicars' lack of standing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                            Date: February 25, 2014

Page 5

### 1. Standing

Under the UCL, standing extends to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition[.]" Cal. Bus. & Prof. Code § 17204. This requirement is governed by a "simple test": a party must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).

#### a. Economic Injury

Goodman argues that "[b]ecause WCS Restoration [the McVicars' contractor]—not plaintiffs—purchased the Goodman brand air conditioner, plaintiffs lack standing to assert a claim under the UCL." Def.'s Mot. to Dismiss 6-7; *see also* Def.'s Reply 4. The Court disagrees; there is no reason to think that UCL standing should be limited in such a way.

Goodman directs the Court's attention to a set of cases that raise similar, but not precisely the same, issues as the one now before the Court. In those cases, plaintiffs attempted to bring UCL claims for products that they spent no money on. *See, e.g.*, *Lanovaz v. Twinings N. Am., Inc.*, 2013 U.S. Dist. LEXIS 25612 (N.D. Cal. Feb. 25, 2013) (claims based on unidentified products not purchased by the named plaintiffs); *In re Intel Laptop Battery Litig.*, 2010 U.S. Dist. LEXIS 132655, at *7-9 (N.D. Cal. Dec. 15, 2010) (claims based on products purchased with company money, not the plaintiff's); *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1012-13 (S.D. Cal. 2009) (claims based on product that plaintiff received as a gift). Under those circumstances, "[t]here is no controlling authority on whether Plaintiffs have standing for products they did not purchase." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 851, 868 (N.D. Cal. 2012) (citing *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012) (collecting cases)). "Courts in this circuit have diverged on [that] question[.]" *Donohue*, 871 F. Supp. 2d at 921-22.

However, this Court need not pick a side in the split. Those cases do not stand for the proposition that in order to have standing, plaintiffs *must themselves purchase each product*. Rather, at most, those cases stand for the proposition that in order to have standing, plaintiffs *must be economically injured by each product* that forms the basis of

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                                  Date: February 25, 2014

Page 6

their UCL claim. For example, in *Miller*, the plaintiff asserted claims for misrepresentation of the contents of five chocolate products, but admitted that he had purchased only one, 912 F. Supp. 2d at 864; in *Intel Laptop*, the plaintiff asserted claims for a product that he purchased, but with corporate funds, 2010 U.S. Dist. LEXIS 132655, at *9; and in *Marilao*, the plaintiff asserted claims for a gift card that he received for free, 632 F. Supp. 2d at 1012-13. In other words, in those cases, the problem was not that the plaintiff had not himself physically purchased the product, it was that the plaintiff was not himself economically injured by the purchase of those products.

Having established that Goodman's cases are inapposite, the Court turns to whether the McVicars have standing under the UCL.

In 2004, California voters "substantially revised the UCL's standing requirement[.]" *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 658, 788 (2010). The California Supreme Court recently explained:

> [W]here once private suits could be brought by 'any person acting for the interests of itself, its members or the general public,' now private standing is limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition. The intent of this change was to confine standing to those actually injured by a defendant's business practices and to curtail the prior practice of filing suits on behalf of 'clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant . . . .'
>
> While the voters clearly intended to restrict UCL standing, *they just as plainly preserved standing for those who had had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices.*

*Id.* (emphasis added) (internal citations omitted).

In *Kwikset*, the California Supreme Court explained that, "[i]f a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount," then the UCL's standing requirements have been satisfied. 51 Cal. 4th at 325. Here, the McVicars hired a contractor to build them a home. Compl. ¶ 55. The contractor "purchased on their behalf and installed" Goodman's product. Compl. ¶ 56. As a result of various required repairs of the product, they have suffered approximately $1,100 in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                          Date: February 25, 2014

Page 7

economic injuries. *See* Compl. ¶¶ 59-60. This satisfies the requirement that a party allege "a personal, individualized loss of money or property in any nontrivial amount." *See Kwikset*, 51 Cal. 4th at 325.

Indeed, "[t]he text of Proposition 64 establishes expressly that in selecting this phrase [injury in fact] the drafters and voters intended to incorporate the established federal meaning." *Kwikset*, 51 Cal. 4th at 322. The initiative declared that a plaintiff lacks UCL standing when he has not "been injured in fact under the standing requirements of the United States Constitution." Prop. 64, § 1, subd. (e). The federal meaning of "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations and quotation marks omitted). "[T]he only difference" in defining "injury-in-fact" between the UCL and Article III is that the former "must be an *economic* injury." *Lanovaz*, 2013 U.S. Dist. LEXIS 25612, at *14 (emphasis added). Here, there is no dispute that the McVicars suffered economic injury—they paid for, and were stuck with, a defective air conditioner.

Therefore, the Court finds that the McVicars have satisfied the economic injury requirement for UCL standing.

### b. Causation

Goodman also argues that "to the extent plaintiffs ground their UCL claims upon alleged misrepresentations by the Goodman Defendants, such statements could not have economically injured plaintiffs because plaintiffs do not allege that they ever saw any alleged misrepresentation." Mot. at 7. The Court agrees.

In order to establish UCL standing, plaintiffs must not only show economic injury, but must also show that the "injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp.*, 51 Cal. 4th 310 at 322. In *In re Tobacco II Cases ("Tobacco Cases")*, the California Supreme Court squarely addressed the question of fraud UCL claims, causation, and standing:

> [W]e conclude that *a plaintiff must plead and prove actual reliance to satisfy the standing requirement of section 17204* but . . . is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                                                         Date: February 25, 2014

Page 8

46 Cal. 4th 298, 328 (2009) (emphasis added).

      This Court begins by parsing out the McVicars' theories of fraud. The first theory is that Goodman affirmatively misrepresented the quality of its air conditioners. *See,* Compl. ¶¶ 35-54; Opp'n at 12-15. The second theory is that Goodman purposefully concealed the defects in its air conditioners. Compl. ¶ 29; Opp'n at 12-15.

      The McVicars clearly failed to establish standing under their first theory. The Complaint contains descriptions of several public representations by Goodman that *would have* induced reasonable reliance, but contains no allegation that either the McVicars or their contractor actually saw those public representations or that the public representations *did* induce reasonable reliance. Therefore, the Court finds that the McVicars failed to plead actual reliance on advertisements or public representations and, therefore, have not established standing. *See Tobacco Cases*, 46 Cal. 4th at 328.

      The Court notes, however, that the standing requirement for fraud UCL claims is not as strict as the pleading requirements under Federal Rule of Civil Procedure 9(b). Under Rule 9(b), a fraud claim might be insufficiently pled if the plaintiff failed to identify specific misrepresentations upon which he relied. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). However, to establish standing to assert a fraud UCL claim, "a plaintiff need [not] demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement." *Tobacco Cases*, 46 Cal. 4th at 327. Nevertheless, here, the McVicars not only failed to point to specific misrepresentations upon which they relied, they failed to point to any.

      The McVicars also failed to establish standing under their second theory. Plaintiffs may predicate a fraud UCL claim on a defendant's omission, but they must show that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Mirkin*, 5 Cal. 4th at 1093. Again, the McVicars make absolutely no allegation that either they or their contractor checked Goodman's website or saw any Goodman advertisement. Indeed, they do not even allege that when purchasing the product, the contractor looked at any packaging or labeling that would have contained the omitted information. Therefore, the Court finds that the McVicars failed to plead that "had the omitted information been disclosed, [they] would have been aware of it and behaved differently." *See Mirkin*, 5 Cal. 4th at 1093; *see also Daniel v. Fort Motor Co.*, No. CIV 11-02890, 2013 U.S. Dist. LEXIS 80638, *12-13 (E.D. Cal. June 7, 2013) ("[A] plaintiff's claim must fail when he never viewed a website, advertisement, or other material that could plausibly contain the allegedly omitted fact.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                                                 Date: February 25, 2014

Page 9

This Court notes that Goodman has posited an array of alternative arguments for why the McVicars' fraud UCL claim cannot go forward. The Court makes no ruling as to the merits of those arguments. It is enough that the McVicars lack standing.

In sum, the McVicars failed to allege facts to support causation and, therefore, failed to establish standing to assert a fraud UCL claim. The Court GRANTS Goodman's Motion to Dismiss the McVicars' fraud UCL claim and DISMISSES it WITHOUT PREJUDICE.

### 2. "Unlawful" Prong Claim

Goodman argues that plaintiffs failed to assert a claim under the "unlawful" prong of the UCL because "plaintiffs do not identify any state or federal law underpinning [such a] claim." Mot. to Dismiss 8. The Court disagrees.

The "unlawful" prong of the UCL " 'borrows' violations of other laws and treats them as unlawful practices." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1990). It proscribes "anything that can properly be called a business practice and that at the same time is forbidden by law." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717-18 (2001) (*quoting Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 113 (1972) (internal quotations omitted).

The Complaint alleges that Goodman violated several laws, including breach of express warranty, California Commercial Code § 2313. As far as the Court can figure, the thrust of Goodman's argument is simply to point out that under the section entitled "Count One: Violation of the California Business and Professional Code," the McVicars do not specifically reference the other sections of the Complaint that identify unlawful business practices. *See* Mot. at 8; Reply at 8-9. The UCL does not create such a formalistic pleading requirement.

Therefore, the Court finds that the McVicars sufficiently pled a UCL claim under the "unlawful" prong and DENIES Goodman's Motion as to that claim.

### 3. "Unfair" Prong Claim

Goodman next argues that the McVicars' "unfair prong UCL claim does not remotely come close to pleading conduct on the part of the Goodman Defendants that 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of those

Case 8:13-cv-01223-DOC-RNB   Document 37   Filed 02/25/14   Page 10 of 19   Page ID #:563

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                               Date: February 25, 2014

Page 10

laws." Reply at 9-10. The Court disagrees because it declines to adopt Goodman's definition of "unfair."

In *Cel-Tech*, the California Supreme Court criticized the prevailing definitions of "unfair," but posited a new definition that was explicitly limited to the context of antitrust, not consumer, actions. *See* 20 Cal. 4th at 185-87. As a result, there is a three-way split in the California courts as to the definition of "unfair" in the consumer context. *See Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 252-53 (2011).

The first test—the "balancing" test—defines an "unfair" business practice as one in which "the gravity of the harm to the victim outweighs the utility of the defendant's conduct." *See, e.g.*, *Smith v. State Farm Mut. Auto Ins. Co.*, 93 Cal. App. 4th 700, 720 n.23 (2001); *People v. Servantes*, 86 Cal. App. 4th 1081, 1095 (2001); *Wilner v. Sunset Life Ins. Co.*, 78 Cal. App. 4th 952, 966 (2000). The second test—the "public policy" test—requires that the UCL claim be tethered to some "specific constitutional, statutory, or regulatory provisions." *See, e.g.*, *Scripps Clinic v. Super. Ct.*, 108 Cal. App. 4th 917, 940 (2003); *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002). Finally, the third test—the "section 5" test—borrows from section 5 of the Federal Trade Commission Act, finding "unfair" business practices where (1) the consumer injury is substantial, (2) any countervailing benefits to consumers or competition do not outweigh the injury, and (3) the consumers could not reasonably avoid the injury. *See, e.g.*, *Camacho v. Auto Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 839 (2006).

The Ninth Circuit has rejected the section 5 test in the consumer context, explaining that although "the California Supreme Court did reference FTC's section 5 as a source of 'guidance,' that discussion clearly revolves around anti-competitive conduct, rather than anti-consumer conduct[.]" *Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) (citing *Cel-Tech*, 20 Cal. 4th at 185-87). Accordingly, this Court rejects the section 5 test.

Otherwise, in the absence of an authoritative instruction, this Court is reticent to adopt either the balancing test or the public policy test. On the one hand, the California Supreme Court did criticize the balancing test—at least in the antitrust context—for being "too amorphous and provid[ing] too little guidance to courts and businesses." *Cel-Tech*, 20 Cal. 4th at 184. On the other hand, it is hard for this Court to see how the public policy test avoids collapsing the "unfair" prong into the "unlawful" prong. Theoretically, the "unfair" prong could capture some of the claims that lie in the penumbra of various constitutional, statutory, or regulatory provisions. However, without clear instruction on

Case 8:13-cv-01223-DOC-RNB   Document 37   Filed 02/25/14   Page 11 of 19   Page ID #:564

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                                            Date: February 25, 2014

Page 11

how closely tethered an "unfair" prong claim must be to such a provision, the public policy test provides only the illusion of guidance.

Recently, the California Supreme Court has indicated that it will resolve this ambiguity soon. *See Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 399 n.9 (2013); *Zhang v. Sup. Ct.*, 57 Cal. 4th 364, 380 n.9 (2013). Until then, at least for the pre-answer stages of litigation, this Court errs toward ensuring a hearing on the merits. Therefore, the Court examines whether "the gravity of the harm to the victim outweighs the utility of the defendant's conduct." *See, e.g.*, *Smith*, 93 Cal. App. 4th at 720 n.23.

Here, the McVicars allege that Goodman sold them defective air conditioners, which were warranted to be "free from defects in materials and workmanship," and then refused to honor that warranty. Compl. ¶¶ 39-67. The Court is hard-pressed to imagine what possible utility would be generated by offering, then not honoring, warranties on defective products. But, the harm to the victim is clear; indeed, in this case, the harm amounted to over $1,000. *Id.*

Therefore, the Court finds that the McVicars sufficiently pled a UCL claim under the "unfair" prong, and DENIES Goodman's Motion to Dismiss this claim.

### B. False Advertising Law Claim

The False Advertising Law ("FAL"), codified at California Business and Professions Code section 17500, provides:

> It is unlawful for any person . . . corporation or association, or any employee thereof . . . to disseminate or cause to be so made or disseminated[,] any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

Cal. Bus. & Prof. Code § 17500. Proposition 64, which narrowed the universe of those who may enforce the UCL, applied with equal force to the FAL. *See Kwikset*, 51 Cal. 4th at 320. In *Tobacco Cases*, the California Supreme Court applied the same standing analysis to both FAL and fraud UCL claims, holding that actual reliance by class representatives is required. *See generally* 46 Cal. 4th 298.

Therefore, this Court's analysis in Section III.A.1.b applies to the McVicars' FAL claim. In other words, the McVicars lack standing to assert a claim of false advertising

Case 8:13-cv-01223-DOC-RNB   Document 37   Filed 02/25/14   Page 12 of 19   Page ID #:565

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)							Date: February 25, 2014

Page 12

because they have not alleged that they or their contractor viewed any advertising at all. Accordingly, the Court GRANTS Goodman's Motion to Dismiss the McVicars' FAL claim and DISMISSES it WITHOUT PREJUDICE.

### C. California Consumer Legal Remedies Act Claim

Goodman next argues, among other things, that the McVicars' California Consumer Legal Remedies Act ("CLRA") claim must be dismissed because they failed to satisfy the affidavit requirement set forth in California Civil Code section 1780(d). The Court agrees.

The CLRA proscribes twenty-four "unfair methods of competition and unfair or deceptive acts or practices." *See* Cal. Civ. Code § 1770. California Civil Code section 1780(d) provides that before filing a CLRA claim, plaintiffs must "concurrently with the filing of the complaint, . . . file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action." Cal. Civ. Code § 1780(d).

The McVicars raise an interesting argument that section 1780(d) is a procedural requirement and, therefore, does not apply to CLRA claims asserted in federal court. Opp'n at 15-16. However, the majority of federal courts that have considered this requirement have applied it. *See, e.g.*, *Rideout v. Similasan Corp.*, No. 12-CV-0376, 2013 U.S. Dist. LEXIS 69369, at *10-11 (S.D. Cal. May 14, 2013) (dismissing for failure to file an affidavit); *In re Sony Grand WEGA KDF-E A10/20 Series Rear Projection HDTV TV Litig.*, 758 F. Supp. 2d 1077, 1094 (S.D. Cal. 2010) (same); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Sup.p 2d 1070, 1077 (N.D. Cal. 2011) (same).

The McVicars do direct the Court's attention to one federal court that held that the affidavit requirement was procedural. *See Evans v. Linden Research, Inc.*, 763 F. Supp. 2d 735, 737 n.1 (E.D. Pa. 2011). There, the court held that "the venue affidavit requirement is procedural (regardless of a conflict) because application of the requirement does not have a significant impact on the outcome of the case." *Evans*, 763 F. Supp. 2d at 737 n.1.

Under *Erie*, courts first consider whether a state rule is in direct conflict with a Federal Rule of Civil Procedure. *Hanna v. Plumer*, 380 U.S. 460 (1965). As with the *Evans* court, this Court concludes that the affidavit requirement in 1780(d) does not directly conflict with any Federal Rule of Civil Procedure. Second, courts consider the

Case 8:13-cv-01223-DOC-RNB   Document 37   Filed 02/25/14   Page 13 of 19   Page ID #:566

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                              Date: February 25, 2014

Page 13

"twin aims" of the *Erie* doctrine: "discouragement of forum shopping and avoidance of inequitable administration of the laws." *Id.* at 468. This is where this Court departs from the *Evans* court. The refusal of federal courts to apply the affidavit requirement only encourages—not discourages—forum shopping. Therefore, even in federal courts, plaintiffs must file an affidavit pursuant to section 1780(d) in order to assert a CLRA claim.

The McVicars did not file such an affidavit. Accordingly, the Court GRANTS Goodman's Motion as to the McVicars' CLRA claim and DISMISSES it WITHOUT PREJUDICE.

### D. Breach of Contract Claim

Goodman next argues that the McVicars' breach of contract claim fails because they did not even allege that a contract existed. Mot. at 17. The Court agrees.

In order to prevail on a breach of contract claim, plaintiffs must show: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011) (citing *Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830 (1968)).

The McVicars allege only that "Defendants have uniformly breached their contracts and warranty agreements." Compl. ¶ 94. But, there is no allegation that a contract existed between the McVicars and Goodman.

In their opposition, they first argue that "[u]nder California law, as elsewhere, supplying a buyer with a defective product is a breach of contract." Opp'n at 18 (citing *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1025 (E.D. Cal. 2013). However, the single case upon which they rely is an action based in tort and fraud, not contract. *See generally, NuCal Foods*, 918 F. Supp. 2d at 1025. Furthermore, such a proposition might possibly be true to determine whether a breach occurred, but it sheds no light on whether a contract actually existed.

In the alternative, the McVicars argue that they are third-party beneficiaries of the contract between Goodman and their contractor, WCS Restoration. First, no such allegation is made in the Complaint. Second, there is not even an allegation that a contract existed between Goodman and WCS Restoration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                                                                    Date: February 25, 2014

Page 14

In short, the McVicars' breach of contract claim is woefully underpled. The Court GRANTS Goodman's Motion to Dismiss the breach of contract claim and DISMISSES it WITHOUT PREJUDICE.

### E. Breach of Express Warranty Claim

Goodman next provides a variety of reasons why the McVicars' breach of warranty claim is defective. The Court disagrees with them all.

Both parties posit the following elements of a claim for breach of express warranty: (1) the exact terms of the warranty; (2) reasonable reliance; and (3) a breach that proximately caused actual injury. *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986) (citing *Burr v. Sherwin Williams Co.,* 42 Cal. 2d 682, 696-97 (1954)). However, in *Williams*, the California appellate court only cursorily examined breaches of express warranty. This Court finds *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1228 (2010)—and its in-depth treatment of breach of express warranty claims—to be far more persuasive.

In *Weinstat*, the court explained that only the "[p]re-Uniform Commercial Code law . . . required the purchaser to prove reliance on specific promises made by the seller." *Id.* at 1227. Rather, "[s]ection 2313, subdivision (1)(a) and (b) of the California Uniform Commercial Code governs" the breach of express warranty cause of action. *Id.* In short, in order to prevail on such a claim, the plaintiff must plead and prove: "(1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." *Id.*

Here, the McVicars have plainly satisfied its pleading obligations under the first and third elements: they allege that Goodman expressly promised that its air conditioners would be "free from defects in materials and workmanship under normal use and maintenance," Compl. ¶ 41, and that the air conditioners were unable to function during normal use, Compl. ¶ 49-54.

However, there remains a question as to whether Goodman's representations were "part of the basis of the bargain." "Section 2313 focuses on the *seller's* behavior and obligation—his or her affirmations, promises, and descriptions of the goods—all of which help define what the seller 'in essence' agreed to sell." *Id.* at 1229. Indeed, "[t]he precise time when words of description or affirmation are made . . . is not material"— even promises made after purchase, such as those contained in product manuals, constitute an "affirmation of fact or promise" if it can be "fairly . . . regarded as part of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                                      Date: February 25, 2014

Page 15

the contract." *Id.* at 1230. Here, the fact that the McVicars did not allege that they saw any promises or affirmations of fact prior to purchase are immaterial, and the claim is well-pled.

Finally, Goodman argues that the McVicars failed to plead that they provided Goodman with pre-suit notice of the breach. *See Cardinal Health301, Inc. v. Tyco Elec. Corp.*, 169 Cal. App. 4th 116, 135-36 (2008). The Court agrees with the McVicars that where, as here, a breach of express warranty claim is brought "by injured consumers against manufacturers with whom they have not dealt[,]" then notice is not required. *See Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 988-89 (N.D. Cal. 2009) (quoting *Greenman v. Yuba Power Prods.*, 59 Cal. 2d 57, 61 (1963)).

Accordingly, the Court DENIES Goodman's Motion to Dismiss the McVicars' breach of express warranty claim.

### F. Breach of Implied Warranty Claim

Goodman next argues that the McVicars' breach of implied warranty claim is defective because the McVicars do not allege that the warranty was breached within one year. Mot. at 21. The Court agrees.

"The duration of the implied warranty of merchantability and where present the implied warranty of fitness shall be coextensive with an express warranty which accompanies the consumer goods[, but] . . . in no event shall such implied warranty have a duration of less than 60 days nor more than one year[.]" Cal. Civ. Code § 1791.1. The McVicars argue that because the air conditioner defects are latent, the one-year limitation does not bar them. Opp'n at 21 (citing *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1305-06 (2009)). The case relied upon by the McVicars, *Mexia*, has been criticized by several courts as contrary to established California law. *See, e.g.*, *Hovsepian v. Apple, Inc.*, Nos. 08-5788, 09-1064, 2009 U.S. Dist. LEXIS 80868, at *24 n.7 (N.D. Cal. Aug. 21, 2009). At the very least, this Court agrees that *Mexia* should be limited to cases in which products were "unmerchantable from the outset." *See id.*

Here, the McVicars make no such allegations. Indeed, the McVicars' complaint lacks many details concerning dates of purchase, such that it is difficult for this Court to assess the adequacy of their pleadings. Accordingly, the Court GRANTS Goodman's Motion to Dismiss the McVicars' breach of implied warranty claim and DISMISSES it WITHOUT PREJUDICE.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                          Date: February 25, 2014

Page 16

### G. Magnuson-Moss Warranty Act Claim

Goodman next argues that the McVicars' claim under the Magnuson-Moss Warranty Act (MMWA) claim "must be dismissed because it depends upon plaintiffs' express and implied warranty claims" and because they do not plead that they "afforded a reasonable opportunity to cure[.]" Mot. at 23-24. The Court disagrees with the former argument, but agrees with the latter.

The MMWA provides a consumer remedy to enforce the terms of an implied or express warranty. 15 U.S.C. § 2310(d). It defines a written warranty as:

> Any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buy which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect-free or will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6)(A). In order to assert a claim under the MMWA, plaintiffs must also "afford[] a reasonable opportunity [for the defendant] to cure" the failure to comply with the warranty. 15 U.S.C. § 2310(c).

As explained in Section III.E, the McVicars have properly asserted a claim for a breach of express warranty. However, the McVicars fail to allege that they "afforded a reasonable opportunity to cure" Goodman's alleged failure to comply with its express warranty. They argue only that they requested replacement parts from Goodman, and that satisfied the requirement of 15 U.S.C. § 2310(c). Opp'n at 22 (citing Compl. ¶¶ 57-59). In *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1144 (N.D. Cal. 2010), the court held that "notice that a defect has manifested and an opportunity to cure are required to state a claim under the MMWA, even if the manufacturer knows of an alleged defect at the time of sale." Similarly, here, Goodman was not put on notice of a breach of a warranty simply because it might have been aware of some defects. Rather, the McVicars were obliged to afford Goodman a reasonable opportunity to cure its defects and, therefore, fulfill the terms of its express warranty. They did not, and so their MMWA claim fails.

The Court GRANTS Goodman's Motion to Dismiss the McVicars' MMWA claim and DISMISSES it WITHOUT PREJUDICE.

Case 8:13-cv-01223-DOC-RNB Document 37 Filed 02/25/14 Page 17 of 19 Page ID #:570

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                                          Date: February 25, 2014

Page 17

## H. Fraudulent Concealment and Negligent Misrepresentation Claims

Goodman next argues that the McVicars' claims for fraudulent concealment and negligent misrepresentation are insufficiently pleaded. Mot. at 22-23. The Court agrees.

To state a claim for fraudulent concealment, a plaintiff must allege: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004).

"Negligent misrepresentation is narrower than fraud." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 984 (2003)). "The elements of a cause of action for fraud and a cause of action for negligent misrepresentation are very similar . . . . [B]oth torts are defined as deceit. However, the state of mind requirements are different." *Id.* (quoting *Intrieri v. Sup. Ct.*, 117 Cal. App. 4th 72, 85 (2004)). "Negligent misrepresentation lacks the element of intent to deceive. Therefore, where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit." *Id.*

Here, as explained above, the Court finds that the McVicars have not alleged justifiable reliance. Quite simply, they do not allege that anyone—neither they nor their contractor—relied on any representations made by Goodman.

The Court makes no ruling as to the other arguments posited by Goodman, but expresses deep skepticism regarding its argument that a negligent misrepresentation claim is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. As this Court previously explained, "the Ninth Circuit 'has not yet decided' the issue," and there are several reasons to believe that Rule 9(b) does not apply to such a claim. *See Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 415-418 (C.D. Cal. 2012).

But, because the McVicars have not plausibly alleged reliance, the Court GRANTS Goodman's Motion to Dismiss both the fraudulent concealment and negligent misrepresentation claims and DISMISSES both claims WITHOUT PREJUDICE.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)　　　　　　　　　　　　　　　　Date: February 25, 2014

Page 18

### I. Unjust Enrichment Claim

Goodman next argues that the McVicars' unjust enrichment claim is not, in fact, a claim. Mot. at 24-25. The Court agrees.

"Courts consistently have held that unjust enrichment is not a proper cause of action under California law." *In re Toyota Motor Corp. Unintended Acceleration, Mktg., Sales Practcies, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010). "The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Melchio v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003). "Unjust enrichment is a 'general principle, underlying various legal doctrines and remedies,' rather than a remedy itself." *Id.* (quoting *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (1989)). "It is synonymous with restitution." *Id.*

Therefore, the Court GRANTS Goodman's Motion to Dismiss the McVicars' unjust enrichment claim. Because it is, in fact, not a claim at all, the Court DISMISSES it WITH PREJUDICE.

### J. Declaratory Relief Claim

Finally, Goodman argues that the McVicars' declaratory relief claim is "deficient, superfluous, and unsustainable." Mot. at 25. The Court agrees.

"Courts may choose not to permit a claim for declaratory relief when resolution of other claims would sufficiently resolve the controversy." *Kho v. Wells Fargo & Co.*, No. CV 12-0847, 2012 U.S. Dist. LEXIS 110957, at *26-28 (C.D. Cal. Aug. 6, 2012). The McVicars respond only that under Federal Rule of Civil Procedure 8(d)(2), they are permitted to plead alternative theories. Opp'n at 24-25. However, here, it is not just that declaratory relief is an alternative theory, it is that it is "entirely duplicative of [their] other claims." *Kho*, 2012 U.S. Dist. LEXIS 110957, at *27.

Therefore, the Court GRANTS Goodman's Motion to Dismiss the McVicars' declaratory relief claim. Furthermore, the Court DISMISSES the claim WITH PREJUDICE.

## IV.   DISPOSITION

For the reasons explained above, the Court GRANTS in part and DENIES in part Goodman's Motion to Dismiss. The Court orders the following:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                                                                Date: February 25, 2014

                                                                                                                                         Page 19

1. The McVicars' claims for unjust enrichment and declaratory relief are DISMISSED WITH PREJUDICE.

2. The McVicars' claims for UCL fraud, FAL, CLRA, breach of contract, breach of implied warranty, MMWA, fraudulent concealment, and negligent misrepresentation are DISMISSED WITHOUT PREJUDICE.

3. The McVicars have leave to file a First Amended Complaint on or before March 31, 2014.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                                Initials of Deputy Clerk: jcb
CIVIL-GEN