**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

O

<u>CIVIL MINUTES – GENERAL</u>

Case No. SACV 13-1223-DOC (RNBx)                                      Date: August 6, 2014

Title: ANNE MCVICAR, ET AL. V. GOODMAN GLOBAL, INC., ET AL.

PRESENT:    <u>THE HONORABLE DAVID O. CARTER, JUDGE</u>

<u>      Julie Barrera      </u>                                    <u>      Not Present      </u>
           Courtroom Clerk                                                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:         ATTORNEYS PRESENT FOR DEFENDANT:
             None Present                                              None Present

**PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING IN PART AND
                                DENYING IN PART MOTION TO
                                DISMISS [48]**

Before the Court is Defendants Goodman Company LP, Goodman Global Inc., and Goodman Manufacturing Company LP's (together, "Goodman's") Motion to Dismiss the First Amended Consolidated Complaint ("Motion" or Mot.") under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 48). Having considered the Motion, the opposition, and the reply, the Court hereby GRANTS in part and DENIES in part the Motion.

**I.    BACKGROUND**

The following facts are contained in Plaintiffs' First Amended Consolidated Complaint ("FACC") (Dkt. 42) and are construed in a light most favorable to them.

**A.   The McVicars**

Sometime before August 2012, Anne and Archie McVicar ("the McVicars") contracted with WCS Restoration to build a home in California. FACC ¶¶ 56-57. During construction of the home, on behalf of the McVicars, WCS Restoration purchased and installed a Goodman-manufactured heating and air conditioning unit. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                                      Date: August 6, 2014
                                                                                                                         Page 2

In August 2012, the McVicars moved in. *Id.* ¶ 56. Approximately three weeks later, the heating and air conditioning unit began to fail. *Id.* ¶ 58. The unit did not produce cold air and would run only on "fan only" mode. *Id.*

WCS Restoration's subcontractor inspected the unit and told the McVicars that the condenser unit was "weak" and should be replaced. *Id.* ¶ 59. In June 2013, the unit began to fail again and the McVicars had it inspected again. *Id.* ¶ 60. The evaporator coil had to be replaced at a cost of $550.00. *Id.* In the next month, the unit needed to be serviced two more times: first, a booster was installed at a cost of $350.00; and second, a stronger booster needed to be installed at a cost of $200.00. *Id.* ¶ 61. In all, the McVicars have spent over $1,000 repairing their Goodman-manufactured heating and air conditioning unit. *Id.* ¶ 62.

      **B.**   **Robert Farmer**

Robert Farmer ("Farmer") purchased a Goodman-manufactured air conditioning unit from C.R. Friend Heating and Air Conditioning ("C.R. Friend"), which installed the unit in Farmer's home on October 27, 2006 *Id.* ¶¶ 63-64.

Approximately twenty months after purchasing and installing the air conditioning unit, it began to fail. *Id.* ¶ 65. On June 30, 2008, a technician from C.R. Friend repaired a leaking evaporator coil at the cost of $709.42. *Id.* On May 7, 2010, the unit required further repairs as a result of a refrigerant leak. *Id.* ¶ 66. Farmer spent $698.50 for these repairs, which were provided by a C.R. Friend technician. *Id.* On June 5, 2011, another repair was needed to resolve a gas leak. A C.R. Friend technician identified and repaired the issue at the cost of $439.00. *Id.* ¶ 67. Twice in May 2012 the unit required repairs, first for a refrigerant leak and then to replace the condensation pump. *Id.* ¶¶ 68-69. C.R. Friend technicians completed the two repairs at the cost of $217.00 and $335.00. *Id.* In June 2013, a technician from One Hour A/C and Heating (which had earlier purchased C.R. Friend) told Farmer that the unit was still leaking refrigerant and should be replaced entirely. *Id.* ¶¶ 70-71. The replacement cost $4,361.00. *Id.* ¶ 71. Farmer has spent over $6,000 repairing and ultimately replacing his Goodman air conditioning unit. *Id.* ¶ 72.

      **C.**   **The Grosses**

In December 2012, Jeffrey and Andrea Gross ("the Grosses") purchased a Goodman-manufactured heating and air conditioning unit from AC Unit Direct, LLP, through AC Unit Direct's website. *Id.* ¶ 73. The Grosses spent $2,976.00 on the unit. *Id.* The unit was installed in the Grosses' home in January 2013 by Mike Mechanical Heating and Air ("Mike Mechanical"). *Id.* ¶ 76.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                                                                           Date: August 6, 2014
                                                                                                                                                        Page 3

      Prior to purchasing the Goodman-manufactured unit, the Grosses conducted research on available air conditioning units. *Id.* ¶ 74. During this research the Grosses saw, reviewed, and relied on Goodman's marketing materials and the representations contained therein, including: statements indicating that Goodman units meet the highest industry standards, that Goodman warranties were considered among the best in the industry, and that Goodman units would efficiently cool homes on even the hottest days of the year. *Id.* ¶¶ 40, 45, 74. The Grosses purchased a Goodman-manufactured unit in reliance on those representations. *Id.* ¶ 74. The Grosses believed the representations in Goodman's marketing materials to be true, and that belief led them to choose a Goodman-manufactured unit. *Id.* ¶ 75. But the FACC alleges that those statements contain material misrepresentations and omissions of material fact regarding the quality and durability of Goodman-manufactured heating and air conditioning units. *Id.*

      When the Grosses attempted to turn on the Goodman-manufactured unit on in May 2013, it did not work properly. A technician from Mike Mechanical concluded on May 20, 2013 that the evaporator coil contained a leak that could not be repaired and that the coil needed to be replaced. *Id.* ¶ 77. The Grosses tried to make a claim through the Goodman warranty program but were denied and told that the warranty protections were unavailable because they had purchased their unit through an online retailer. *Id.* ¶ 78. The Grosses have expended $1,600 to replace the evaporator coil.

      **D.   Rich Harlan**

      On January 31, 2008, Rich Harlan ("Harlan") instructed his contractor Erick Trejo to purchase a Goodman-manufactured heating and air conditioning unit on Harlan's behalf. *Id.* ¶ 80. The unit cost approximately $4,500.00. *Id.* The unit was installed in Harlan's home on or around that same date. *Id.* ¶ 84.

      Before choosing a Goodman product, Harlan read and relied on Goodman's advertising materials, including the representations that the Grosses viewed. *See id.* ¶ 81. Relying on those representations, which allegedly contain material misrepresentations and omissions of material fact regarding the reliability of the Goodman-manufactured unit, led Harlan to choose a Goodman product. Harlan specifically relied on Goodman's representations that its product is of a superior quality and fitness and carries a superior warranty. *Id.* ¶ 82-83.

      Harlan paid for a service contract with Bell Brothers Heating and Air ("Bell Brothers") in Sacramento to cover the repair and maintenance of his Goodman-manufactured unit. *Id.* ¶ 85. The contract was initiated in or around February 2013. *Id.* In or around May 2013, Harlan noticed that the Goodman unit was not performing up to his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                                            Date: August 6, 2014
                                                                                                                              Page 4

expectations and notified Bell Brothers, which sent a technician. *Id.* ¶ 86. The technician informed Harlan that the unit's refrigerant levels were low and needed to be replenished. *Id.* ¶ 87. The refrigerant was refilled under the service contract with Bell Brothers. *Id.* On March 21, 2014, a Bell Brothers technician performed a routine check on the unit, and informed Harlan that the unit was leaking refrigerant and again out of coolant. *Id.* ¶ 88. Harlan was told that the repair was not covered by his service contract and would cost approximately $1,600.00. *Id.*

      E.   **Class Allegations**

Goodman has sold, directly or indirectly, thousands of air conditioners in the State of California to homeowners, developers, contractors, and subcontractors. *Id.* ¶¶ 36-37. They also designed, manufactured, marketed, and advertised those air conditioners. *Id.* ¶ 37. With each air conditioner, Goodman provided an express warranty, along with warranting that the air conditioners were fit for the ordinary purpose for which air conditioners are used and were free from defects in materials and workmanship. *Id.* ¶ 38. The express warranties provided that the air conditioners would be "free from defects in materials and workmanship under normal use and maintenance" for periods ranging from five to ten years. *Id.* ¶ 41.

On its website, Goodman represents that, "[w]hen you choose a Goodman brand, you can rest assured that you'll receive a refreshingly affordable product that's covered by what many consider to be the best product warranties in the heating and cooling industry." *Id.* ¶ 40. Goodman has also advertised that "[e]ven on the hottest days of the year, [consumers] can keep [their homes] cool and comfortable while enjoying low energy costs with a high-efficiency Goodman brand air conditioner," that "[consumers] will enjoy top quality, high-efficiency cooling," and that Goodman "focused on the design, engineering, and manufacture of dependable products that have helped millions and millions of homeowners achieve reliable, high-quality, and affordable indoor comfort." *Id.* ¶ 45.

Based on these facts, the named Plaintiffs seek to represent the following class:

> All persons and entities in the State of California that have purchased not for resale [sic] residential air conditioners under the Goodman or Amana brand names since July 1, 2006, or who own a home or other structure in which the Goodman Products are installed [sic] since July 1, 2006.

*Id.* ¶ 27.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                                           Date: August 6, 2014
                                                                                                                                                                Page 5

### F. Procedural History

The McVicars filed this putative class action on August 12, 2013. *See generally* Compl. (Dkt 1). The Complaint asserted eleven causes of action: (1) violation of California Business and Professions Code section 17200 for unfair, unlawful, and fraudulent business practices; (2) violation of California Business and Professions Code section 17500 for deceptive and false advertising; (3) violation of the California Consumer Legal remedies Act; (4) breach of contract; (5) breach of express warranty; (6) breach of the implied warranty of merchantability; (7) fraudulent concealment; (8) negligent misrepresentation; (9) violation of the Magnuson-Moss Consumer Products Liability Act; (10) unjust enrichment; and (11) declaratory relief. *Id.*

On October 4, 2013 Goodman filed a Motion to Dismiss Case. Mot. to Dismiss (Dkt 10).

On November 4, 2013, Goodman filed a Motion to Stay Case Pending a JPML Ruling. Mot. to Stay (Dkt. 18). On November 25, 2013, this Court granted the Motion to Stay, noting that "in consideration of the fact that the action is still in its nascent stages of development and out of deference to the JPML, the Court finds it prudent to temporarily stay this case pending a decision by the JPML." Order, November 25, 2013 (Dkt. 22). On January 8, 2014, this Court lifted the stay following a decision by the JPML to decline consolidation of this case with others pending in other states. Order, January 8, 2014 (Dkt. 24).

On February 25, 2014, the Court granted in part and denied in part Goodman's Motion to Dismiss. Order, February 25, 2014 (Dkt. 36). In that Order, the Court denied the motion with respect to the McVicars' claims for breach of express warranty and the unfair and unlawful prongs of the claims under California Business and Professions Code section 17200; dismissed with prejudice the claims for declaratory relief and unjust enrichment; and dismissed with leave to amend the McVicars' other claims. *Id.*

In an April 16, 2014 Order, the Court consolidated *Robert Farmer, et al. v. Goodman Global Inc., et al.*, Case No. EDCV 14-0088-DOC (RNBx) into the McVicar's case. Order, April 16, 2014 (Dkt 43).

In anticipation of that Order, all of the named Plaintiffs in the consolidated action filed the FACC on March 31, 2014. *See generally* FACC (Dkt 42). The FACC asserts eight causes of action: (1) violation of California Business and Professions Code section 17200 for unfair, unlawful, and fraudulent business practices; (2) violation of California Business and Professions Code section 17500 for deceptive and false advertising; (3)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)　　　　　　　　　　　　　　　　　　　　　Date: August 6, 2014
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 6

violation of the California Consumer Legal Remedies Act; (4) breach of express warranty; (5) breach of the implied warranty of merchantability; (6) fraudulent concealment; (7) negligent misrepresentation; and (8) violation of the Magnuson-Moss Consumer Products Liability Act. *Id.*

The Court now considers the pending Motion to Dismiss the FACC.

## II.　LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, courts accept as true a plaintiff's well-pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts are not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead each of the elements of a fraud claim with particularity, *i.e.*, a plaintiff "must set forth more than the neutral facts necessary to identify the transaction." *Cooper v. Pickett*, F.3d 616, 625 (9th Cir. 1997) (emphasis in original). In other words, fraud claims must be accompanied by the "who, what, when, where, and how" of the fraudulent conduct charged. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). While statements of the time, place, and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient. *Id.*

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                                                          Date: August 6, 2014
                                                                                                                  Page 7

a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).

       Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

### III. ANALYSIS

#### A. Unfair Competition Law Claim

       The Plaintiffs' Unfair Competition Law claim asserts that Goodman's conduct was unlawful, unfair, and fraudulent. FACC ¶¶ 90-108.

       California's Unfair Competition Law ("UCL"), Business & Professions Code section 17200, provides relief for "unfair competition," which is defined as "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200; *Zhang v. Superior Court*, 57 Cal. 4th 364, 370 (2013); *Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

       Goodman first moves to dismiss the UCL claim for several reasons, which the Court addresses in turn.

##### 1.     "Fraud" Prong Claim

       The Court previously dismissed the McVicars' UCL claim under the "fraud" prong for lack of standing, ruling that the Complaint failed to allege any sort of reliance on Goodman marketing materials that could have caused the McVicars to purchase a Goodman unit, and thereby be damaged. Order at 7-9, February 25, 2014. The FACC adds no new allegations addressing this issue, and is similarly devoid of any allegations sufficient for Farmer to have standing to press a fraud UCL claim. Notably, the Plaintiffs' opposition makes clear that neither Farmer nor the McVicars intend to press a fraud UCL claim. *See* Pls.' Opp'n at 8. But because the FACC suggests that all claims are being

asserted by all Plaintiffs, the Court dismisses the fraud UCL claims with respect to Farmer and the McVicars for the sake of clarity.

As to the Grosses and Harlan, Goodman makes several arguments, which the Court addresses below.

### a. Particularity under Rule 9(b)

Goodman argues that the Plaintiffs have failed to meet the heightened particularity standards of Rule 9(b) by failing to specify which Defendant was responsible for which misrepresentations and omissions. Mot. at 7-8. The Court disagrees.

As the Court noted above, under Federal Rule of Civil Procedure 9(b), claims that sound in fraud must be accompanied by the "who, what, when, where, and how" of the fraudulent conduct charged. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). It is clear that Rule 9(b)'s requirements apply to claims for violation of the California Consumer Legal Remedies Act and fraud UCL claims. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal quotation marks and citation omitted). In *Swartz*, the complaint alleged generally that the "defendants" engaged in fraudulent conduct, but only attributed specific fraudulent conduct to some of the defendants, who were wholly unrelated entities, including a law firm, an accounting firm, a bank, and an investment advising firm. *Id.* at 757, 765. In ruling that the allegations were insufficient, the *Swartz* court noted that it was not enough that the plaintiffs had included conclusory allegations to the effect that those defendants accused of specific fraudulent conducted acted as agents of the other defendants. *Id.* at 765.

In this case however, while the Plaintiffs do not specify which of the three named Goodman entities made the allegedly fraudulent misrepresentations and omissions of material fact, the FACC points to specific representations and omissions and asserts that all the Defendants were responsible. More important, in addition to the allegation that each Goodman is a "principal and/or agent" of the other, FACC ¶ 26, the Plaintiffs also allege that Goodman Global, Inc. is the parent company of the other Defendants, FACC ¶ 25. In the Court's view, this differentiates the present case from the allegations in *Swartz*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                                                  Date: August 6, 2014
                                                                                                        Page 9

Rather than accuse all Defendants of fraud, but point to specific fraudulent conduct of only a few, the Plaintiffs here have alleged specific fraudulent statements and omissions of material fact made by all the Defendant entities, who share a corporate relationship. That is certainly sufficient specificity to put Goodman on notice of the conduct of which it is accused, and to require more would exceed Rule 9(b)'s requirements in violation of strong federal court policy in favor of resolving disputes on the merits.

Therefore the Court concludes that the Plaintiffs have sufficiently identified who made the allegedly fraudulent statements.

### b.  Misrepresentations

Goodman also argues that the Plaintiffs have failed to identify any actionable misrepresentations in the FACC, and that instead the statements in Goodman's marketing materials amount to no more than puffery. Mot. at 8-9. Though the Court agrees as to many of the statements, there are several allegations of representations by Goodman that amount to more than mere puffery.

In the context of misrepresentations under the UCL, restrictions on false advertising, and other fraud claims, "[g]eneralized, vague and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) (quoting *Anunziato v. EMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005)). The line between puffery and actionable misrepresentations is not always clear, particularly at the pleading stage. But while "misdescriptions of specific or absolute characteristics of a product are actionable," *Cook Perkiss & Liehe, Inc. v. N. Cal. Collection Servs., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990), general statements describing a product as superior to its competitors are not, *Rasmussen v. Apple Inc.*, __ F. Supp. 2d __, 2014 WL 1047091, at *9 (N.D. Cal. Mar. 14, 2014) (providing chart detailing what is and is not puffery in the Ninth Circuit).

Based on the relevant caselaw, statements describing Goodman-manufactured air conditioning units as "refreshing affordable product[s]" or as having "industry leading warranties," FAAC ¶ 40, are clearly puffery. *Cf. In re Toyota Motor Corp. Unintended Acceleration*, 754 F. Supp. 2d 1208, 1229 (C.D. Cal. 2010) (holding that descriptions such as "high quality, reliable, and dependable" and "outstanding quality" were puffery). But the Plaintiffs also allege that the Grosses and Harlan relied in part on the statement that "[e]ven on the hottest days of the year, [consumers] can keep [their] home cool and comfortable while enjoying low energy costs with a high-efficiency Goodman brand air conditioner." FACC ¶ 45. At least at the pleading stage, that a reasonable consumer could

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                                               Date: August 6, 2014
                                                                                                                        Page 10

rely on such a statement such that knowingly selling a defective unit that would not reliably cool one's home after releasing such marketing materials is actionable fraud. *Cf. Chacanoaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010) (ruling that describing a food product as "wholesome" where the product had allegedly dangerous additives was actionable); *Anunziato v. EMachines, Inc.*, 402 F. Supp. 2d 1133, 1141-42 (C.D. Cal. 2005) (holding that statements claiming a computer had gone through the "most stringent quality control tests" was actionable).

Thus, the Court will not say that all of Goodman's alleged misrepresentations are mere puffery. Consequently, the fraud UCL claims do not fail on that ground.

### c. Goodman's Knowledge of the Defect

Goodman further argues that the Plaintiffs have failed to allege Goodman's knowledge of the alleged defects *at the time of sale*, and that this failure dooms their fraud UCL claim (among other claims). Mot. at 9-10. The Court agrees.

To survive a motion to dismiss when asserting a fraud UCL claim, the Plaintiffs must allege that Goodman was aware of the alleged defects at the time the air conditioning units were sold. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145-46 (9th Cir. 2012). In *Wilson*, the plaintiffs' allegations that laptop manufacturer had been "on notice" of the defect affecting the laptops and "as early as 2002" were insufficient to survive a motion to dismiss where only undated customer complaints and conclusory allegations of access to aggregate data regarding the risk of overheating laptops were offered as the basis of the manufacturer's knowledge. *Id.* at 1146-47.

Here, the FACC alleges no date by which Goodman received customer complaints such that it became aware of the defects in the air conditioning units. Instead, the FACC merely alleges that Goodman "knew or should have known" based on consumer complaints, that units were failing at higher rates than were standard in the industry, and based on Goodman's setting up of a program for its dealers designed to address the problem. FACC ¶ 7. Even drawing reasonable inferences in favor of the Plaintiffs, under *Wilson*, these allegations are insufficient to show that Goodman was aware of defects in its air conditioning units at the time they were sold to the Plaintiffs.

On this basis, the Court GRANTS the motion to dismiss the fraud UCL claim. As to the Grosses and Harlan, the claim is DISMISSED WITHOUT PREJUDICE. As to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                                Date: August 6, 2014
                                                                                                                    Page 11

Farmer and the McVicars, the Court DISMISSES the fraud UCL claim WITH PREJUDICE.[1]

### 2.     "Unlawful" Prong Claim

Goodman argues that the Plaintiffs failed to assert a claim under the "unlawful" prong of the UCL. Mot. to Dismiss at 15. The Court disagrees.

The "unlawful" prong of the UCL "'borrows' violations of other laws and treats them as unlawful practices." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1990). It proscribes "anything that can properly be called a business practice and that at the same time is forbidden by law." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717-18 (2001) (*quoting Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 113 (1972) (internal quotations omitted).

The FACC alleges that Goodman violated several laws, including negligent misrepresentation as to the Grosses and Harlan. Though not listed among the predicate violations in the FACC, *see* FACC ¶ 95, it is clear that violation of virtually any law can serve as a predicate violation for claim under the unlawful prong of the UCL. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (2010). Moreover, the Court has already explained that such a formalistic pleading requirement is not necessary to state a UCL claim. Order at 9, February 25, 2014.

As explained below, the FACC does not adequately allege any unlawful practice as to Farmer or the McVicars that could serve as a predicate for their claim. Therefore their unlawful UCL claim must be dismissed.

Therefore, the Court GRANTS in part and DENIES in part Goodman's Motion as to that claim. As to Farmer and the McVicars, the claim is DISMISSED WITHOUT PREJUDICE. The Motion is DENIED as to the Grosses and Harlan.

### 3.     "Unfair" Prong Claim

Goodman next argues that the Plaintiffs' "unfair" prong UCL claim fails. Mot. at 13-15. The Court disagrees largely on the basis of its reasoning above and in its prior Order.

---

[1] Because the Court dismisses the fraud UCL claim, at this time it need not address Goodman's argument that Harlan's claim is foreclosed by his air conditioning unit's having functioned properly during the life of its express warranty.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                                                     Date: August 6, 2014
                                                                                                                                                                                                                                                 Page 12

       The Court's prior Order explained that the Court would examine whether the gravity of the harm to the victim outweighs the utility of the defendant's conduct. Order at 11, February 25, 2014 (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 720 n.23 (2001)).

       Here, as discussed below, the Grosses and Harlan adequately allege that Goodman negligently misrepresented the fitness of its products to consumers and also allege that such a practice is unfair. *See* FACC ¶¶ 101, 166-75. As in its prior Order, the Court cannot think what possible utility would be generated by making misrepresentations and omissions of material fact without due care, but the Grosses and Harlan have clearly faced pecuniary harm.

       While the Court is wary as before of allowing the unfair prong to merge into the unlawful prong, here all other claims asserted by Farmer and the McVicars are dismissed, and the Court has, as explained below, changed its position on the express warranties issue in light of the full language of the written warranty. The Court is therefore hard-pressed to say that Farmer or the McVicars have alleged any "unfair" business practice in more than a conclusory way. Their unfair UCL claim will therefore be dismissed.

       Therefore, the Court finds that the Grosses and Harlan sufficiently pled a UCL claim under the "unfair" prong, and DENIES Goodman's Motion to Dismiss their claim. The Court GRANTS the Motion as Farmer and the McVicars, and DISMISSES the claim WITHOUT PREJUDICE.

     **B. False Advertising Law Claim**

       The False Advertising Law ("FAL"), codified at California Business and Professions Code section 17500, provides:

> It is unlawful for any person . . . corporation or association, or any employee thereof . . . to disseminate or cause to be so made or disseminated[,] any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

Cal. Bus. & Prof. Code § 17500. As the Court explained in its prior Order, the same standing analysis applies to FAL claims as fraud UCL claims. Order at 11-12, February 25, 2014. In addition, the Plaintiffs have indicated that neither Farmer nor the McVicars intend to assert an FAL claim. Therefore the same reasoning as in Section III.A.1 applies and the Court will dismiss their FAL claims with prejudice.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                                          Date: August 6, 2014
                                                                                                               Page 13

      As to the Grosses and Harlan, the analysis in Section III.A.1.c above also applies because FAL claims also sound in fraud. As articulated above, the Grosses and Harlan have failed to adequately allege that Goodman had knowledge of any defects at the time of sale, such that a claim involving a plan to deceive could lie. Therefore their FAL claims also fail.

.     On this basis, the Court GRANTS the motion to dismiss the FAL. As to the Grosses and Harlan, the claim is DISMISSED WITHOUT PREJUDICE. As to Farmer and the McVicars, the Court DISMISSES the FAL claim WITH PREJUDICE.

### C. California Consumer Legal Remedies Act Claim

      Goodman next argues, among other things, that the McVicars' California Consumer Legal Remedies Act ("CLRA") claim must be dismissed. Mot. at 15-18. The Court agrees.

      The CLRA proscribes twenty-four "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." *See* Cal. Civ. Code § 1770(a). "California federal courts have held that, under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). As explained above, the Plaintiffs have failed to adequately allege Goodman's knowledge of the defects at the time of sale. Therefore the CLRA claim may be dismissed on that basis alone.

      Because the issues may be addressed when and if the Plaintiffs replead their CLRA claim, the Court declines to rule at this time on Goodman's arguments that Harlan's claim is foreclosed because his unit functioned properly during the life of the warranty period and that the Plaintiffs have failed to plead that they transacted directly with Goodman. The Court does note its doubts, however, that Goodman's argument regarding the CLRA's transaction language will prevent the CLRA claim from going forward. Other district courts have permitted CLRA claims to proceed against retailers and manufacturers. *See, e.g.*, *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 991-92 (E.D. Cal. 2012). Moreover, all of the contrary authorities cited by Goodman can be distinguished as cases where the plaintiffs either suffered no pecuniary loss themselves, or else failed to allege that the manufacturer was directly responsible for misrepresentations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1223-DOC (RNBx)                                                            Date: August 6, 2014
                                                                                                                                          Page 14

The Court GRANTS Goodman's Motion as to the Plaintiffs' CLRA claim and DISMISSES it WITHOUT PREJUDICE.

### D. Breach of Express Warranty Claim

Goodman argues that the Plaintiffs have failed to allege that the terms of their warranties were breached. Mot. at 19-21.[2] The Court agrees that the terms of the express warranty were not alleged to have been breached.

In *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010), the court explained that in order to prevail on breach of express warranty claim, the plaintiff must plead and prove: "(1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." *Id.*

In its prior Order, the Court noted that the McVicars had satisfied their pleading obligations by alleging that Goodman had expressly promised that its air conditioning units would be free from defects under normal use and that the units were unable to function under normal use. Order at 14-15, February 25, 2014. The Court reasoned that the McVicars' failure to plead any reliance on Goodman's promises prior to purchase did not affect the viability of the express warranty claim:

> "Section 2313 focuses on the *seller's* behavior and obligation—his or her affirmations, promises, and descriptions of the goods—all of which help define what the seller 'in essence' agreed to sell." [*Weinstat*, 180 Cal. App. 4th at 1229.] Indeed, "[t]he precise time when words of description or affirmation are made . . . is not material"—even promises made after purchase, such as those contained in product manuals, constitute an "affirmation of fact or promise" if it can be "fairly . . . regarded as part of the contract." *Id.* at 1230. Here, the fact that the McVicars did not allege that they saw any promises or affirmations of fact prior to purchase are immaterial, and the claim is well-pled.

Order at 15, February 25, 2014. On the one hand, it is true that the same reasoning applies to Goodman's alleged misrepresentation that even on the hottest days of the year, Goodman units would efficiently cool one's home, *see* FACC ¶ 45, because nothing in *Weinstat* suggests that advertising language is precluded from being a statement that is part of the basis of the bargain.

---

[2] Goodman's argument that Plaintiff Rich Harlan's claims are subject to a five-year warranty was withdrawn. *See* Joint Stipulation (Dkt. 65).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                                                      Date: August 6, 2014
                                                                                                                                 Page 15

But on the other hand, a seller may "limit its liability for defective goods by disclaiming or modifying a warranty." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 830 (2006). The Court finds that the language of Goodman's written warranty, of which the Court takes judicial notice, clearly limits the Plaintiffs' remedy for a defect within the warranty period to requesting "a replacement part" that Goodman would provide "free of charge." *See* Martin Decl., Ex. A (Dkt. 48-2).[3] Among the named Plaintiffs, only the Grosses actually allege that they sought to make a claim for a replacement part through the warranty program. *See* FACC ¶ 78. And by the Grosses' own admission, their warranty claim was denied because they purchased their Goodman unit through an online retailer. *Id.* The written warranty is clear that its terms do not extend to "any unit ordered over the Internet . . . ." Martin Decl., Ex. A.

Moreover, while the Plaintiffs do allege that the limited remedy offered by the warranty is unconscionable, their stated basis sounds in fraudulent inducement to contract: namely the contention that Goodman knew of defects at the time of their sale. *See* FACC ¶ 147. But that allegation is insufficient for the reasons described above.

Because the breach of express warranty claim fails for the Plaintiffs' failure to adequately allege they sought the remedy provided for by the warranty, the Court will dismiss the claim and need not reach Goodman's other arguments.

Accordingly, the Court GRANTS Goodman's Motion to Dismiss the Plaintiffs' breach of express warranty claim and DISMISSES it WITHOUT PREJUDICE.

### E. Breach of Implied Warranty Claim

Goodman next argues that the Plaintiffs' breach of implied warranty claim is defective for a host of reasons. Mot. at 21-22; Reply at 17-21. The Court finds that the Grosses' claim may go forward but that the other Plaintiffs' implied warranty claims must be dismissed.

To assert an implied warranty claim, a plaintiff must generally "stand in vertical contractual privity with the defendant" and "an end consumer . . . who buys from a

---

[3] Because the FACC describes some terms of the written warranty, *see* FACC ¶ 41, the Court may consider the full document, provided by Goodman and whose authenticity the Plaintiffs do not dispute, even on a motion to dismiss. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court flatly rejects the Plaintiffs' argument that Goodman is barred from presenting this argument for having failed to raise it in its prior 12(b)(6) motion. First, that prior motion was directed against the McVicars' Complaint and did not speak to the consolidated Plaintiffs. More critically, it is well settled that filing an amended complaint supersedes the previous pleading, such that it is treated as nonexistent. *In re WellPoint, Inc.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012). District courts in the Ninth Circuit have permitted defendants seeking dismissal of an amended complaint to make arguments previously made and to raise new arguments, and the Court permits as much here. *See id.* at 893-94.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                                                Date: August 6, 2014
                                                                                                                                          Page 16

retailer is not in privity with a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). Although the Plaintiffs suggest that privity is not required where a plaintiff is a third-party beneficiary of a contract between a manufacturer and a distributor or retailer, *see Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978), the Plaintiffs have not actually alleged that they are third-party beneficiaries of any contracts in their FACC, and moreover California law does not appear to have applied this exception to the consumer context. As one district court explained:

> Some federal district court judges erroneously have inferred a third-party exception to California's privity rule from a single 1978 decision by the California Court of Appeal, *Gilbert Fin. Corp. v. Steelform Contracting Co.,* 82 Cal. App. 3d 65, 145 Cal. Rptr. 448 (1978). The *Gilbert* decision dealt with a plaintiff who contracted with a general contractor to build a building and later sued a subcontractor whom the contractor had hired to work on the project. That decision explicitly did "not need to decide the issue of privity" because it found that the plaintiff was a third-party beneficiary of the contract between the general contractor and the subcontractor. *Gilbert,* 82 Cal. App. 3d at 69-70, 145 Cal. Rptr. 448; *see Outdoor Servs., Inc. v. Pabagold, Inc.,* 185 Cal. App. 3d 676, 683, 230 Cal. Rptr. 73 (1986). No reported California decision has held that the purchaser of a consumer product may dodge the privity rule by asserting that he or she is a third-party beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made the sale.

*Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011). However, one general exception to the privity requirement does exist when the plaintiff relies on advertisements of the manufacturer. *Clemens*, 534 F.3d at 1023.

      Thus, it follows that those Plaintiffs who have not alleged reliance on Goodman's advertising may not press this claim. The Court must therefore dismiss the implied warranty claim as to Farmer and the McVicars, but will do so without prejudice.

      As to the Grosses and Harlan, the Court holds that Harlan's claim must also be dismissed for failure to allege the existence of the defect within one year. In dismissing the McVicars' implied warranty claim in its earlier Order, the Court explained that:

> "The duration of the implied warranty of merchantability and where present the implied warranty of fitness shall be coextensive with an express

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                                        Date: August 6, 2014
                                                                                                                                      Page 17

> warranty which accompanies the consumer goods[, but] . . . in no event shall such implied warranty have a duration of less than 60 days nor more than one year[.]" Cal. Civ. Code § 1791.1. The McVicars argue that because the air conditioner defects are latent, the one-year limitation does not bar them. Opp'n at 21 (citing *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1305-06 (2009)). The case relied upon by the McVicars, *Mexia*, has been criticized by several courts as contrary to established California law. *See, e.g.*, *Hovsepian v. Apple, Inc.*, Nos. 08-5788, 09-1064, 2009 U.S. Dist. LEXIS 80868, at *24 n.7 (N.D. Cal. Aug. 21, 2009). At the very least, this Court agrees that *Mexia* should be limited to cases in which products were "unmerchantable from the outset." *See id.*

Order at 15, February 25, 2014. Now, faced squarely with the issue, the Court concludes that because Harlan only alleged that his Goodman unit began to malfunction over five years after purchase, to allow a claim to proceed based on the conclusory allegation that the unit was unfit for use from the beginning would essentially read any time limits on implied warranties out of existence. *See Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1021 (S.D. Cal. 2011) (rejecting implied warranty claim regarding malfunctioning television under similar circumstances and distinguishing *Mexia* on same basis). Harlan's claim is therefore dismissed.

       The Court will permit the Grosses' claim to go forward. The FACC clearly alleged that the Goodman unit began malfunctioning within a year of its purchase. *See* FACC ¶¶ 73, 77. The Court disagrees with Goodman that the Grosses' claim cannot proceed under the Song-Beverly Act for failure to allege an at-retail purchase in California. *See Kowalsky v. Hewlett-Packard Co.*, 2010 WL 5141869, at *13 (N.D. Cal. Dec. 13, 2010), *vacated in part on other grounds*, 2011 WL 1466136 (N.D. Cal. Apr. 15, 2011). *Kowalsky* dealt with a unit purchased online by a New Jersey resident. *Id.* The Grosses clearly alleged that their unit was purchased, albeit online, for their home in California.

       Though the likelihood of any Plaintiffs other than the Grosses of successfully alleging a breach of implied warranty is slim, the Court is mindful of the liberal policy of granting leave to amend. Therefore, the Court GRANTS the Motion to Dismiss as to Farmer, Harlan, and the McVicars, and their implied warranty claim is DISMISSED WITHOUT PREJUDICE. The Court DENIES the Motion to Dismiss as to the Grosses.

### F. Magnuson-Moss Warranty Act Claim

Goodman next argues that the Plaintiffs' claim under the Magnuson-Moss Warranty Act (MMWA) claim must be dismissed because the number of named plaintiffs is less than one hundred and because Goodman was not afforded a reasonable opportunity to cure the alleged defects. Mot. at 25. The Court disagrees with both contentions.

The MMWA provides a consumer remedy to enforce the terms of an implied or express warranty. 15 U.S.C. § 2310(d). "[I]f the action is brought as a class action, and the number of named plaintiffs is less than one hundred," the claim is not cognizable. *Id.* § 2310(d)(3)(C). However, where a plaintiff properly invokes another basis for jurisdiction, such as under the Class Action Fairness Act, a Court may consider the claims. *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 954 (C.D. Cal. 2012). Here, the Plaintiffs have invoked the Class Action Fairness Act in the FACC. FACC ¶ 13. Given that the Plaintiffs have alleged a class of thousands of person, *id.* ¶ 30, the Court may reach the MMWA claim.

The Plaintiffs contend that they are only pursuing an MMWA claim on behalf of the Grosses. Opp'n at 23 n.6. The Court will therefore dismiss any MMWA claim that the McVicars, Farmer, or Harlan may have with prejudice. As to the Grosses, the Court denied the Motion to Dismiss their implied warranty claim. Moreover the Grosses alleged that they sought relief under Goodman's warranty program. FACC ¶ 78. This appears to satisfy the opportunity to cure requirement, and Goodman appears to concede as much by only arguing in the Motion that Farmer, Harlan, and the McVicars failed to offer Goodman an opportunity to cure. Mot. at 25. The Grosses have therefore stated an MMWA claim.

The Court DENIES Goodman's Motion to Dismiss the Grosses' MMWA claim. Any MMWA claim asserted by Farmer, Harlan, or the McVicars is DISMISSED WITH PREJUDICE.

### G. Fraudulent Concealment and Negligent Misrepresentation Claims

Goodman next argues that the Plaintiffs' claims for fraudulent concealment and negligent misrepresentation are insufficiently pleaded. Mot. at 22-23. The Court agrees in part, but will permit the Grosses and Harlan's negligent misrepresentation claim to go forward.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)	Date: August 6, 2014
	Page 19

To state a claim for fraudulent concealment, a plaintiff must allege: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004).

"Negligent misrepresentation is narrower than fraud." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 984 (2003)). "The elements of a cause of action for fraud and a cause of action for negligent misrepresentation are very similar . . . . [B]oth torts are defined as deceit. However, the state of mind requirements are different." *Id.* (quoting *Intrieri v. Sup. Ct.*, 117 Cal. App. 4th 72, 85 (2004)). "Negligent misrepresentation lacks the element of intent to deceive. Therefore, where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit." *Id.* Further, to be actionable, "the representation need not be made with knowledge of actual falsity, but need only be an 'assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.'" *Gagne v. Bertran*, 43 Cal. 2d 481, 487 (1954) (citation omitted).

Here, the Plaintiffs represent that only the Grosses and Harlan are pursuing these claims. The Court will therefore dismiss any fraudulent concealment and negligent misrepresentation claims as to Farmer and the McVicars with prejudice.

As to the Grosses and Harlan, the same analysis discussed above with regard to Goodman's knowledge of the alleged defect dooms the fraudulent concealment claim here. As above, the Court rejects the argument that the Plaintiffs have failed to adequately identify which Goodman entity made which alleged misrepresentation or fraudulent omission, as well as the argument that the alleged misrepresentations are mere puffery. But because the allegations fail to adequately plead Goodman's knowledge that its actionable misrepresentations and omissions were false at the time of sale, those claims cannot survive.

While both parties combine the analysis of the fraudulent concealment and negligent misrepresentation claims, the Court believes that the different elements compel a different result. As explained above, California's law of negligent misrepresentation does not require that Goodman have had the intent to deceive or knowledge that its representations were false at the time of sale, but merely that it should have known of the defects at that time. *See Gagne*, 43 Cal. 2d at 487. At the pleading stage, the Court believes that the Grosses and Harlan have adequately alleged facts such they would be

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1223-DOC (RNBx)                                              Date: August 6, 2014

                                                                                                        Page 20

entitled to relief. It will therefore deny the Motion to Dismiss their negligent misrepresentation claim on that basis.

        In light of the foregoing reasoning, the Court GRANTS Goodman's Motion to Dismiss both the fraudulent concealment and negligent misrepresentation claims as to Farmer and the McVicars and DISMISSES those claims WITH PREJUDICE. The Court DISMISSES the fraudulent concealment claim as to the Grosses and Harlan WITHOUT PREJUDICE. The Court DENIES Goodman's Motion to Dismiss the negligent misrepresentation claims as to the Grosses and Harlan.

## IV. DISPOSITION

        For the reasons explained above, the Court GRANTS in part and DENIES in part Goodman's Motion to Dismiss. The Court orders the following:

1. The Plaintiffs' CLRA and breach of express warranty claims are DISMISSED WITHOUT PREJUDICE

2. The Grosses and Harlan's claims for UCL fraud, FAL, and fraudulent concealment are DISMISSED WITHOUT PREJUDICE.

3. Farmer and the McVicars' claims under the unlawful and unfair prongs of the UCL are DISMISSED WITHOUT PREJUDICE

4. Farmer and the McVicars' claims for UCL fraud, FAL, fraudulent concealment, and negligent misrepresentation are DISMISSED WITH PREJUDICE.

5. Farmer, Harlan, and the McVicars' breach of implied warranty claim is DISMISSED WITHOUT PREJUDICE.

6. Farmer, Harlan, and the McVicars' MMWA claim is DISMISSED WITH PREJUDICE.

7. The Plaintiffs have leave to file a Second Amended Complaint on or before September 12, 2014.

        The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                                                                         Initials of Deputy Clerk: jcb
CIVIL-GEN